Steven McQUEEN, Appellant
(Defendant below ),

v.

STATE of Indiana, Appellee
(Plaintiff below ).

No. 49S00–9709–CR–521.

Supreme Court of Indiana.

May 21, 1999.

S. Sargent Visher, Indianapolis, Indiana, Attorney for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Janet Brown Mallett, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

SULLIVAN, Justice.

Defendant Steve McQueen was identified by his cousin and convicted by a jury as the killer of a man who had been missing for a year. He appeals, arguing that he was improperly detained before trial and that the trial court admitted evidence and instructed the jury incorrectly. Finding no error, we affirm the trial court.

We have jurisdiction over this direct appeal because the longest single sentence exceeds 50 years. Ind. Const. art. VII, § 4; Ind. Appellate Rule 4(A)(7).

1. Ind.Code § 35–42–1–1 (1993).

2. Defendant was also charged and convicted on a second count of auto theft. *See* Ind.Code § 35–43–4–2.5 (1993). On this count, Defendant was sentenced to one and one-half years in the Department of Corrections to be executed and served concurrently with count one.

3. Criminal Rule 4(A) states, in relevant part:
   Defendant in Jail. No defendant shall be detained in jail on a charge, without a trial, for a period in aggregate embracing more than six (6) months from the date the criminal charge

*Background*

On April 3, 1996, the State charged Defendant with the murder of Jacob Lumpkin. Lumpkin had disappeared approximately one year earlier and had last been seen with Defendant and Defendant's cousin, Jimmy McQueen. The police had questioned Defendant and his cousin several times about Lumpkin's disappearance, and each time they had denied any knowledge of Lumpkin's whereabouts. But in March of 1996, Jimmy McQueen had admitted that Defendant killed Lumpkin and that both men had transported the victim's body to a drainage ditch just outside Knox, Indiana. Jimmy led police to the ditch and police recovered the body. An autopsy determined that the cause of death had been multiple gunshot wounds to the head. At a jury trial conducted in December, 1996, Defendant was convicted of Murder.[1] The trial court subsequently sentenced him to serve 60 years in the Department of Corrections.[2]

**I**

Defendant first contends that he was improperly detained before trial. Specifically, he argues that the failure to release him after more than six months in jail without trial violated Ind.Crim.Rule 4(A) as well as the state constitutional prohibition against treating prisoners with "unnecessary rigor." We disagree.

**A**

Indiana Criminal Rule 4 exists to aid in implementing an accused's right to speedy trial, as provided in the constitutions of both Indiana and the United States. *Joyner v. State*, 678 N.E.2d 386, 391 (Ind.1997). Subsection (A)[3] applies to defendants de-

against such defendant is filed, or from the date of his arrest on such charge (whichever is later); except where a continuance was had on his motion, or the delay was caused by his act, or where there was not sufficient time to try him during such period because of congestion of the court calendar.... Any defendant so detained shall be released on his own recognizance at the conclusion of the six-month period aforesaid and may be held to answer a criminal charge against him within the limitations provided for in subsection (C) of this rule.

tained in jail on a charge without trial for more than six months, and requires such defendants to be released on their own recognizance from the end of the six-month period until trial. *Id.* at 391–92. However, it is well established that the language of Crim.R. 4(A) merely entitles a defendant to release pending trial and does not preclude subsequent prosecution, so long as the one-year limitation of Crim.R. 4(C) [4] is met. *Battle v. State,* 275 Ind. 70, 415 N.E.2d 39, 41 (1981); *Collins v. State,* 266 Ind. 430, 364 N.E.2d 750, 755 (1977). That is, Rule 4(A) provides for release pending trial, but it makes no provision for discharge. Even assuming that the trial was delayed more than six months beyond the critical date as fixed by Crim.R. 4(A), the State was, nevertheless, authorized to bring Defendant to trial. Defendant is not entitled to the relief he seeks.

**B**

Defendant next contends that the delay of more than six months without trial violated his rights as guaranteed by Article I, § 15, of the Indiana Constitution. That section provides that "[n]o person arrested, or confined in jail, shall be treated with unnecessary rigor." As for an explanation of how the delay in this case—apparently caused by a number of continuances—resulted in "unnecessary rigor," Defendant suggests that "[t]his seldom-construed provision applies by virtue of the fact that confinement in jail is, by its nature, rigorous, and by virtue of the clear expression of Criminal Rule 4(A) that imprisonment after six months without a trail is forbidden and clearly unnecessary." (Appellant's Bf. at 24). We disagree.

■ Under the reasoning offered by Defendant, any violation of Crim.R. 4(A) would likely constitute "unnecessary rigor," violating Article I, § 15. Article I, § 15 is not a catch-all provision applicable to every adverse condition accompanying confinement. Rather, it serves to prohibit extreme instances of mistreatment and abuse. As we have stated previously:

Cases recognizing violations of Article 1, Section 15 involve situations where a prisoner was tortured, had a tooth knocked out, was repeatedly beaten, kicked and struck with a blackjack and beaten with a rubber hose while he was stretched across a table, *Kokenes v. State,* 213 Ind. 476, 13 N.E.2d 524 (1938), where a prisoner was beaten with police officer's fists in both eyes, cut on the top of his head, and beaten with a rubber hose on the head and ears, *Bonahoon v. State,* 203 Ind. 51, 178 N.E. 570 (1931), and where a prisoner was severely injured after being shot by police during a protest, *Roberts v. State,* 159 Ind.App. 456, 307 N.E.2d 501 (1974).

*Ratliff v. Cohn,* 693 N.E.2d 530, 541 (Ind. 1998). Given this standard, we find that Defendant's imprisonment pending trial, while exceeding the six-month period outlined in Crim.R. 4(A), does not rise to the level of the "unnecessary rigor" contemplated by Article I, § 15.

**II**

Defendant argues that his conviction should be reversed because the trial court admitted into evidence photographs of the victim's skeletal remains. He contends the pictures were irrelevant because the parties stipulated that the skeletal remains found in a ditch in Starke County were those of Jake Lumpkin and that the cause of death was multiple gunshot wounds to the head. Even if they were relevant, he argues, their prejudicial effect outweighed their probative value and they should have been excluded.

■ The admission of photographic evidence falls within the sound discretion of the trial court and we will not reverse absent an abuse of discretion. *Amburgey v. State,* 696 N.E.2d 44, 45 (Ind.1998). The fact that a photograph may depict gruesome details of a crime is not a sufficient basis for its exclusion. *Isaacs v. State,* 659 N.E.2d 1036, 1043 (Ind.1995). The question is whether the photograph's probative value outweighs its prej-

4. Under Criminal Rule 4(C) a defendant, whether jailed or released, will be discharged if not brought to trial within one year after arrest or charge, excluding delays attributable to the defendant and certain circumstances of court congestion. Ind.Crim.Rule 4(C); *Joyner,* 678 N.E.2d at 392.

udicial effect. *Id.; Mitchell v. State*, 557 N.E.2d 660, 665 (Ind.1990).

 Although the identity of the remains recovered by police and the cause of death were stipulated by the parties, the precise nature of the injuries suffered by the victim were not. The photographs at issue here were admitted in conjunction with expert testimony to explain the nature and location of the victim's wounds, as well as to describe other evidence obtained from the expert's examination of the remains. Such information served to illustrate the testimony of the State's expert. While we agree that courts must be cautious of inflammatory and cumulative evidence, we are not persuaded that the photographs at issue were so prejudicial as to influence the jury improperly. We conclude the court did not abuse its discretion in admitting the photographs.

### III

Defendant contends that the trial court committed reversible error by giving the jury an instruction on accessory liability. Because he was charged as a principal in the commission of the crime, Defendant argues that this instruction contradicted the State's theory of the case and was both confusing and misleading. We disagree.

 Under the relevant statutory provision,[5] there is no distinction between the criminal responsibility of a principal and that of an accomplice. *Marshall v. State*, 621 N.E.2d 308, 313 (Ind.1993). Thus, one may be charged as a principal yet convicted as an accomplice. *Hoskins v. State*, 441 N.E.2d 419, 425 (Ind.1982). Accordingly, this Court has repeatedly held that where one is charged as a principal it is not error to instruct on the crime of aiding in the commission of the crime when there is evidence to support such an instruction. *Jones v. State*, 697 N.E.2d 57, 60 (Ind.1998); *Wright v. State*, 690 N.E.2d 1098, 1104 (Ind.1997); *Whittle v. State*, 542 N.E.2d 981, 991 (Ind. 1989); *Fisher v. State*, 468 N.E.2d 1365, 1369 (Ind.1984); *Doss v. State*, 256 Ind. 174, 267 N.E.2d 385, 389 (1971). In such an instance,

the instruction on accessory liability does not represent an additional charge or a new theory of the case. *Hoskins*, 441 N.E.2d at 425.

 At trial, evidence was presented showing that the victim was last seen with Defendant and his cousin, Jimmy McQueen. While Defendant was fingered by Jimmy McQueen as the actual killer, this testimony might have been self-serving. With evidence supporting the inference that either of the McQueens could have been the actual killer with the other aiding in the crime, we find the trial court justified in giving an instruction on accessory liability.

### Conclusion

We affirm the trial court's judgment.

SHEPARD, C.J., and DICKSON, SELBY, and BOEHM, JJ., concur.

---

**5.** Ind.Code § 35–41–2–4 (1993) (providing that a person "who knowingly or intentionally aids, induces, or causes another person to commit an offense commits that offense").